# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT   NORTHERN DISTRI   : NEW YORK | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>KIMBERLY A. BRODERICK | Case Number:<br>14-10338-REL | |
|---|---|---|

*NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>BANK OF AMERICA, N.A. | COURT USE ONLY |
|---|---|

| Name and address where notices should be sent:<br>Bank of America, N.A.<br>PO Box 660933<br>Dallas, TX 75266-0933<br>Telephone number:        email: | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br>(If known)<br><br>Filed on: _____ |
|---|---|

| Name and address where payment should be sent(if different from above):<br>Bank of America, N.A.<br>PO Box 660933<br>Dallas, TX 75266-0933<br>Telephone number:        email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

1. Amount of Claim as of Date Case Filed 02/21/2014:    $ 242,645.10

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: MONEY LOANED
(See instruction #2 on reverse side.)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>******5111 | 3a. Debtor may have scheduled account as:<br><br>(See instructions #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>Nature of property or right of setoff: ☒ Real Estate : 127 CALHOUN DRIVE, TROY, NY 12182<br>☐ Motor Vehicle   ☐ Other<br><br>Value of Property: $_____¹<br><br>Annual Interest Rate  6.750  % ●Fixed  or  ☐ Variable ☐ Step-Rate<br>(when case was filed) | Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br><br>$ 59,930.85<br><br>Basis for perfection: MORTGAGE____<br><br>Amount of Secured Claim: $ 242,645.10<br><br>Amount of Unsecured:   $_____ |
|---|---|

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls into one of the following categories, check the box specifying the priority and state the amount.

| ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. § 507(a)(4). | ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | Amount entitled to priority: |
|---|---|---|---|
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__). | $_____ |

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.



B10 (Official Form 10) (04/13)

2

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim secured on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See Instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. **Signature:** (See instruction #6)

Check the appropriate box.

☒ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Trish Walker
Title: Bookkeeper, Dr. Walker
Company: Vail at Fenwick
Address and telephone number (if different from notice address above):
5401 N Beach Street
Fort Worth TX 76137

[Signature]   Trish Walker   5/13/2014
[Date]

Telephone number: (817) 656-10115   email: Trish.Walker@vailatfenwick.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 11 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into one category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credit:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B10 (Official Form 10) (04/13)

3

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**Mortgage Proof of Claim Attachment**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.
See Bankruptcy Rule 3001(c)(2).

Name of debtor(s):   KIMBERLY A. BRODERICK

Case number: 14-10338-REL

Name of creditor:   BANK OF AMERICA, N.A.

Last four digits of any number you use to identify the debtor's account:   *****5111

**Part 1: Statement of Principal and Interest Due as of the Petition Date**

Itemize the principal and interest due on the claim as of the petition date (Include in the Amount of Claim listed In Item 1 on your Proof of Claim form).

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. Principal due | | | | | | (1) $ | 183,250.82 |

| 2. Interest due | Interest Rate | From mm/dd/yyyy | To mm/dd/yyyy | | Amount | | |
|---|---|---|---|---|---|---|---|
| | 6.750 % | 04/01/2011 | 01/31/2014 | $ | 35,046.86 | | |
| | % | | | $ | | | |
| | % | | | $ | | | |
| | Total Interest due as of the petition date | | | $ | 35,046.86 | Copy total here ▶ (2) $ | 35,046.86 |

| | |
|---|---|
| 3. Total principal and interest due | (3) $ 218,297.68 |

**Part 2: Statement of Prepetition Fees, Expenses, and Charges**

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | Amount | |
|---|---|---|---|
| 1. Late Charges | | (1) $ | |
| 2. Non-sufficient funds (NSF) Fees | | (2) $ | |
| 3. Attorney's Fees | 7/3/12 Atty/Trustee fee @ $980 | (3) $ | 980.00 |
| 4. Filing fees and court costs | 7/3/12 court costs @ $400, 7/3/12 filing fees @ $95, 1/17/14 filing fee @ $45, 01/20/14 filing fee @ $50 | (4) $ | 590.00 |
| 5. Advertisement costs | | (5) $ | |
| 6. Sheriff/auctioneer fees | | (6) $ | |
| 7. Title costs | 7/3/12 @ $564 | (7) $ | 564.00 |
| 8. Recording fees | 7/3/12 @ $35 | (8) $ | 35.00 |
| 9. Appraisal/broker's price opinion fees | | (9) $ | |
| 10. Property Inspection fees | *See attached breakdown | (10) $ | 96.00 |
| 11. Tax advances (non-escrow) | | (11) $ | |
| 12. Insurance Advances | | (12) $ | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | *See attached analysis | (13) $ | 220.08 |
| 14. Property preservation expenses: Specify: _____ | | (14) $ | |
| 15. Post Petition Attorney's Fees | | (15) $ | |
| 16. Other. Specify:_Process Server Fee_ | 7/3/12 @ $395 | (16) $ | 395.00 |
| 17. Other. Specify:_____ | | (17) $ | |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above | | (18) $ | 2,879.06 |

**Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date**

Does the installment payment amount include an escrow deposit?

☐ No

⬤ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| 1. Installment payments due | Date last payment received by creditor | 04/27/2011 | | |
|---|---|---|---|---|
| 2. Amount of installment payments due | Number of installment payments due | (1) | 34 | |

| | | | | |
|---|---|---|---|---|
| 11 | Installments @ $ 1,675.75 | $ | 18,433.25 | |
| 5 | Installments @ $ 1,662.68 | $ | 8,414.40 | |
| 12 | Installments @ $ 1,699.67 | | 20,396.04 | |
| 6 | Installments @ $ 1,634.68 | $ | 9,808.08 | |

| | | | | | |
|---|---|---|---|---|---|
| Total Installment payments due as of the petition date | $ 57,051.77 | Copy total here ▸ | (2) $ | 57,051.77 |

3. Calculation of cure amount

| | | | |
|---|---|---|---|
| **Add** total prepetition, fees, expenses, and charges | Copy total from Part 2 here ▸ | + $ | 2,879.08 |
| **Subtract** total of unapplied funds (funds received but not credited to account) | | - $ | 0.00 |
| **Subtract** amounts for which debtor is entitled to a refund | | - $ | 0.00 |
| Total amount necessary to cure default as of the petition date | | (3) $ | 59,930.85 |

Copy total onto
Item 4 of Proof
of Claim form

On Going Post Petition Payment effective _____03/01/2014___ lao: $____1,679.45_____

Bank of America, N.A. services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of BANK OF AMERICA, N.A. , "NOTEHOLDER".

Note holder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Note holder or has been duly endorsed.

**ITEMIZED STATEMENT - FORM B10 # 1 AS TO TOTAL DEBT**

(Other fees included in the calculation of the Total Debt)

| | |
|---|---:|
| Principle Balance | $ 183,250.82 |
| Interest | $ 35,046.86 |
| Escrow Balance | $ 21,688.42 |
| Filing Fees and Court Costs | $ 590.00 |
| Attorney Fees | $ 980.00 |
| Property Inspection Fees | $ 95.00 |
| Recording Fees | $ 35.00 |
| Title Fees | $ 564.00 |
| Process Server Fee | 395.00 |
| Total interest, other fees and charges to be included in Total Debt | $ 242,645.10 |

Property Inspections:
10/4/11, 11/7/11, 11/29/11, 12/28/11, 2/6/12, 3/9/12, 7/27/12, 8/22/12 @ $10
2/10/14 @ $15

**Bank of America**

Home Loans

*CUSTOMER SERVICE*
*P.O. BOX 5170*
*SIMI VALLEY, CA  93062-5170*

C3_2962  ESCSTMTA  16394  05/30/2013

Statement date:        02/26/2014

Loan No.:            ▓▓▓▓▓

MICHAEL & KIMBERLY A. BRODERICK
127 CALHOUN DR
TROY        NY      12182

Property address:
127 CALHOUN DRIVE
TROY, NY  12182

---

## IMPORTANT MESSAGE ABOUT YOUR HOME LOAN

Your escrow account was recently reviewed as part of the terms of your Chapter 13 plan and, as a result, the escrow portion of your monthly loan payment may be changing effective 03/01/2014.

Enclosed is an updated escrow analysis statement for your loan.

## WHAT YOU NEED TO DO

There's nothing you need to do. Please keep this notification for your records.

### QUESTIONS?
We're pleased to serve your home loan needs. If you have any questions, please call us at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

We're required by law to inform you that Bank of America, N.A. is a debt collector. If you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt or demand a payment. If you are represented by an attorney, please provide this notice to your attorney.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved. Some products may not be available in all states. This is not a commitment to lend. Restrictions apply.

This Page Is left blank Intentionally

| 3 of 8 | **Bank of America** | | **Account Number** ▮▮▮▮ | **Statement Date  02/26/2014** |

**Home Loans**

MICHAEL & KIMBERLY A. BRODERICK
127 CALHOUN DRIVE
TROY, NY  12182

## Escrow Account Review

**ESCROW EXPLAINED**  This escrow statement is being sent for **Informational purposes only**. It should not be construed as an attempt to collect a debt or to modify the terms of your chapter 13 plan. Note that your chapter 13 bankruptcy plan may provide for the Trustee to pay escrow amounts outstanding on your loan as of the date you filed your bankruptcy case or may otherwise provide for the Trustee to pay amounts due to escrow.

Part of your monthly loan payment goes into an account to pay for your property taxes and insurance premiums. During the year, payments are made out of this account when bills come due. This notice describes any changes needed in your monthly payment to maintain enough money in your escrow account to pay these bills. In our step-by-step analysis, we determine the data shown below to calculate your new escrow payment.

If this is your first escrow statement after filing your chapter 13 bankruptcy, this escrow account review was performed as of the date you filed for bankruptcy and your new monthly escrow payment has been calculated in accordance with applicable bankruptcy law. The amount shown in the Summary section below as the New monthly home loan payment is the updated and correct amount due for the month shown. If you previously received a monthly coupon for the same due date, the payment amount below is intended to replace the coupon you previously received, as the coupon was prepared and sent before we had notice of your chapter 13 bankruptcy filing.If you're making your monthly mortgage payments under your chapter 13 plan, please pay the New monthly home loan payment amount shown below.

If this is an annual escrow statement provided during your chapter 13 bankruptcy, we've prepared this escrow statement to track your escrow obligations during the period when you're making payments under the terms of your chapter 13 plan.

If you have filed a chapter 13 plan that provides for maintaining your home, our step-by-step analysis is based on the assumption that you will be making your chapter 13 plan payments, including plan payments to cure amounts due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan. If you're unable to complete your plan payments and your case is dismissed, converted to a chapter 7, or the automatic stay is lifted, then your monthly escrow payment will need to be recalculated to account for the cure amounts still due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan.

*See below for:*

• an in-depth explanation of each step of your escrow analysis   • side-by-side comparison of last year's projected and actual data

**NEW YORK RESIDENTS**

•  We are obligated to make all payments for taxes and real property insurance for which the real property tax and insurance account is maintained and if any such payments are not timely made, we are responsible for making such payments including any penalties and interest. We shall also be liable for any damages resulting from the failure to make timely real property insurance payments unless excluded from liability as described below;

•  You are obligated to pay one-twelfth of the real property taxes and insurance premiums each month to us which we will deposit into the real property escrow account, unless there is a deficiency or surplus in the account, in which case a greater or lesser amount may be required;

•  If we should become subject to the provisions of either Art.1, Sec. 6-k(2)© or Art. 9, Sec. 953(3) we must deposit the escrow payments made by you in a banking institution or a licensed branch of a foreign banking corporation whose deposits are insured by a federal agency; and

•  We cannot impose any fees relating to the maintenance of the real property tax escrow account.

•  In the event that a real property insurance premium notice is sent directly to you by the insurer, you shall have the obligation to promptly send us the premium notice for payment. Your failure to do so may jeopardize your insurance coverage and may excuse us from any liability resulting from a failure to timely make the real property insurance payment.

| SUMMARY | Base amount needed (see Step 1) | The expected monthly amount needed to pay your property taxes and insurance premiums | $648.66 |
| | Shortage payment (see Step 2) | The monthly amount you must pay into your escrow account to keep the balance from falling below zero during the year | $0.00 |
| | Reserve requirement (see Step 3) | The monthly amount allowed by federal law for unexpected tax and insurance increases and other costs | $0.00 |
| | New monthly escrow payment (see Step 4) | | **$648.66** |
| | New monthly home loan payment effective 03/2014 (see Step 4) | | **$1,679.45** |

In future escrow analyses, Bank of America, N.A. reserves the right to assess the amount allowed by federal law for unexpected tax and insurance increases and other costs.

4 of 8

**Bank of America**

**Home Loans**

| Account Number ▉▉▉▉▉ | Statement Date 02/26/2014 |

MICHAEL & KIMBERLY A. BRODERICK
127 CALHOUN DRIVE
TROY, NY 12182

---

## HOW WE CALCULATE YOUR ESCROW PAYMENT

### STEP 1   Determine base amount needed for the year

| Escrow items | Amount needed | Frequency in months | Monthly amount needed |
|---|---|---|---|
| Homeowners Insurance | $891.00 | 12 | $74.25 |
| Monthly PMI | 112.12 | 1 | 112.12 |
| School taxes | 2,763.74 | 12 | 230.31 |
| City taxes | 2,783.77 | 12 | 231.98 |
| Total monthly base payment amount | | | $648.66 |

### STEP 2   Determine lowest projected balance
In the chart located below, we project the amounts you will pay into your escrow account next year and the amounts we will pay out for your insurance and tax bills. Remember, these figures are only projections and may not reflect the actual payments made at the time they are due.

| Month | Escrow deposit(s) | Tax payment(s) | Insurance payment(s) | MIP/PMI payment(s) | Balance |
|---|---|---|---|---|---|
| Post Petition Beginning Balance | | | | | $536.57 |
| March 2014 | 648.66 | | | 112.12 | 1,073.11 |
| April 2014 | 648.66 | | | 112.12 | 1,609.65 |
| May 2014 | 648.66 | | | 112.12 | 2,146.19 |
| June 2014 | 648.66 | | | 112.12 | 2,682.73 |
| July 2014 | 648.66 | | | 112.12 | 3,219.27 |
| August 2014 | 648.66 | | 891.00 | 112.12 | 2,864.81 |
| September 2014 | 648.66 | 2,763.74 | | 112.12 | 637.61 |
| October 2014 | 648.66 | | | 112.12 | 1,174.15 |
| November 2014 | 648.66 | | | 112.12 | 1,710.69 |
| December 2014 | 648.66 | | | 112.12 | 2,247.23 |
| January 2015 | 648.66 | 2,783.77 | | 112.12 | .00 ٭ |
| February 2015 | 648.66 | | | 112.12 | 536.54 |
| Post Petition Ending Balance | | | | | $536.54 |
| **Lowest projected balance** | | | | | **$0.00** |
| **Shortage payment amount** | | | | | **$0.00** |

The Post-Petition Beginning and Ending balances above are projected balances, which assume that all payments due under your chapter 13 bankruptcy plan will be made, including your regularly scheduled mortgage payments due after the bankruptcy filing and all plan payments to cure amounts due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan.

At the time of analysis, Bank of America, N.A. assumes that all scheduled mortgage payments will be made to the effective date of your new payment.

### STEP 3   Determine reserve requirement
Federal law allows for the collection of a reserve amount to maintain a cushion for unexpected tax and/or insurance increases and other costs.
The reserve used for this period is shown below.

| | |
|---|---|
| Lowest projected balance (see Step 2 above) | $0.00 |
| Total reserve requirement (.0% of the base amount) * | $0.00 |
| Additional amounts required | .00 |
| **Monthly reserve requirement (.00 divided by 12)** | **$0.00** |
| **Potential overage** | **$0.00** |

* Base amount equals the total of payments anticipated to be paid out of the escrow account during the year but excludes Private Mortgage Insurance (PMI) or MIP amounts.

### STEP 4   Determine monthly payments
**Calculation of monthly escrow payment**

| | |
|---|---|
| Base amount needed for taxes and/or insurance (see Step 1) | $648.66 |
| Shortage payment (see Step 2) | .00 |
| Reserve requirement (see Step 3) | .00 |
| **Total monthly escrow payment** | **$648.66** |

**Calculation of monthly home loan payment**

| | |
|---|---|
| Principal and/or interest | $1,030.79 |
| Total monthly escrow payment | 648.66 |
| **Total monthly home loan payment effective 03/2014** | **$1,679.45** |

| 5 of 8 | **Bank of America** | | | | | |

<table>
<tr><td>Home Loans</td><td>Account Number [_____]</td><td>Statement Date  02/26/2014</td></tr>
</table>

MICHAEL & KIMBERLY A. BRODERICK
127 CALHOUN DRIVE
TROY, NY 12182

| **LAST YEAR IN REVIEW** | Current analysis compared to previous | **Monthly amount** | |
|---|---|---|---|
| | Amount needed for taxes and insurance | Last analysis | This analysis |
| | Homeowners insurance | $70.67 | $74.25 |
| | Monthly PMI | 112.12 | 112.12 |
| | School taxes | 226.99 | 230.31 |
| | City taxes | 220.90 | 231.98 |
| | Total base escrow payment | $632.68 | $648.66 |
| | Shortage payment | 12.28 | .00 |
| | Reserve requirement | .00 | .00 |
| | Rounding amount | .00 | .00 |
| | **Monthly escrow payment** | 644.96 | **$648.66** |
| | Principal and/or Interest | $1,030.79 | $1,030.79 |
| | Monthly escrow payment | 644.96 | 648.66 |
| | **Total payment amount** | **$1,675.75** | **$1,679.45** |

**Summary of escrow change**

As shown, your base escrow amount increased. Your reserve percentage remained unchanged. Your reserve payment remained unchanged. The result of these factors caused your total escrow payment to increase.

A side-by-side comparison of last year's projected escrow account activity and actual activity can be found below.

**Last year's escrow payments**
If you have recently filed a chapter 13 bankruptcy, then we have provided below a side-by-side comparison of your prior projected escrow account activity to the actual account activity.

If this is an annual escrow statement provided during your chapter 13 bankruptcy, then the projected escrow account activity below was performed in accordance with the terms of your chapter 13 plan. At the same time, we also maintained a separate accounting that reflected your escrow account activity as would be provided under the terms of your loan documents outside of bankruptcy (shown below under the heading "Actual"). The Actual escrow activity includes both the receipt of your regular monthly mortgage payments to escrow and any cure payments made under the terms of your chapter 13 plan for escrow amounts due from the period before your bankruptcy filing or otherwise due under your chapter 13 plan. Below is the side-by-side comparison of the plan projected activity to the actual activity for last year. Upon the completion of your chapter 13 plan, if all payments due under the chapter 13 plan are received and taxes and insurance were paid in the amounts anticipated then the projected and actual ending balances should match. If you are unable to complete your chapter 13 plan payments and your case is dismissed, converted to a chapter 7, or the automatic stay is lifted, then the actual accounting shown below will be used in performing your next escrow analysis.

| **Projected** | | | | | **Actual** | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Activity | Paid in | Paid out | Balance | Date | Activity | Paid in | Paid out | Balance | |
| | Beginning balance | | | $1,005.88 | | Beginning balance | | | -$14,016.59 | |
| 03/02/2013 | Monthly PMI | | 112.12 | 893.76 | 04/15/2013 | PMI payment | | 112.12 | -14,128.71 | |
| 04/01/2013 | Apr Payment | 644.96 | | 1,538.72 | 05/15/2013 | PMI payment | | 112.12 | -14,240.83 | |
| 04/02/2013 | Monthly PMI | | 112.12 | 1,426.60 | 06/14/2013 | PMI payment | | 112.12 | -14,352.95 | |
| 05/01/2013 | May Payment | 644.96 | | 2,071.56 | 07/15/2013 | PMI payment | | 112.12 | -14,465.07 | |
| 05/02/2013 | Monthly PMI | | 112.12 | 1,959.44 | 07/29/2013 | Homeowners Ins pmt | | 891.00 | -15,356.07 | |
| 06/01/2013 | Jun Payment | 644.96 | | 2,604.40 | 08/14/2013 | PMI payment | | 112.12 | -15,468.19 | |
| 06/02/2013 | Monthly PMI | | 112.12 | 2,492.28 | 08/13/2013 | PMI payment | | 112.12 | -15,580.31 | |
| 07/01/2013 | Jul Payment | 644.96 | | 3,137.24 | 09/23/2013 | School tax pmt | | 2,763.74 | -18,344.05 | |
| 07/02/2013 | Monthly PMI | | 112.12 | 3,025.12 | 10/15/2013 | PMI payment | | 112.12 | -18,456.17 | |
| 08/01/2013 | Aug Payment | 644.96 | | 3,670.08 | 11/14/2013 | PMI payment | | 112.12 | -18,568.29 | |
| 08/02/2013 | Homeowners insurance | | 848.00 | 2,822.08 | 12/13/2013 | PMI payment | | 112.12 | -18,680.41 | |
| 08/02/2013 | Monthly PMI | | 112.12 | 2,709.96 | 01/15/2014 | PMI payment | | 112.12 | -18,792.53 | |
| 09/01/2013 | Sep Payment | 644.96 | | 3,354.92 | 01/23/2014 | City tax pmt | | 2,783.77 | -21,576.30 | |
| 09/02/2013 | Monthly PMI | | 112.12 | 3,242.80 | 02/14/2014 | PMI payment | | 112.12 | -21,688.42 | * |
| 09/02/2013 | School taxes | | 2,747.89 | 494.91 | 02/21/2014 | May Payment | 603.89 | | -21,084.53 | P |
| 10/01/2013 | Oct Payment | 644.96 | | 1,139.87 | 02/21/2014 | Jun Payment | 603.89 | | -20,480.64 | P |
| 10/02/2013 | Monthly PMI | | 112.12 | 1,027.75 | 02/21/2014 | Jul Payment | 603.89 | | -19,876.75 | P |
| 11/01/2013 | Nov Payment | 644.96 | | 1,672.71 | 02/26/2014 | Misc. posting | 220.08 | | -19,656.67 | P |
| 11/02/2013 | Monthly PMI | | 112.12 | 1,560.59 | | Ending balance | | | -$19,656.67 | |
| 12/01/2013 | Dec Payment | 644.96 | | 2,205.55 | | | | | | |
| 12/02/2013 | Monthly PMI | | 112.12 | 2,093.43 | | | | | | |
| 01/01/2014 | Jan Payment | 644.96 | | 2,738.39 | | | | | | |
| 01/02/2014 | Monthly PMI | | 112.12 | 2,626.27 | | | | | | |
| 01/02/2014 | City taxes | | 2,650.82 | -24.55 | * | | | | | |
| 02/01/2014 | Feb Payment | 644.96 | | 620.41 | | | | | | |
| 02/02/2014 | Monthly PMI | | 112.12 | 508.29 | | | | | | |
| 03/01/2014 | Mar Payment | 644.96 | | 1,153.25 | | | | | | |
| 03/02/2014 | Monthly PMI | | 112.12 | 1,041.13 | | | | | | |
| | Ending balance | | | $1,041.13 | | | | | | |

**Bank of America**



**Home Loans**

| Account Number | | Statement Date 02/26/2014 |

MICHAEL & KIMBERLY A. BRODERICK
127 CALHOUN DRIVE
TROY, NY 12182

**Summary of escrow payments and disbursements**

| | |
|---|---|
| City taxes | 2,650.82 |
| Homeowners Insurance | 848.00 |
| Payments | 7,739.52 |
| School taxes | 2,747.89 |
| Monthly PMI | 1,457.56 |

**Summary of escrow payments and disbursements**

| | |
|---|---|
| City taxes | 2,783.77 |
| Homeowners Insurance | 891.00 |
| Payments | 1,811.67 |
| School taxes | 2,763.74 |
| Misc posting | 220.08 |
| PMI payment | 1,233.32 |

\* Lowest projected balance

P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

In performing the projection above, Bank of America, N.A. assumed that all regularly scheduled mortgage payments would be made that were due prior to the projection period.

8 of 8

| IN RE: | Chapter: 13 |
| --- | --- |
| KIMBERLY A. BRODERICK<br>Debtor. | Case No. 14-10338-REL |
| | AFFIDAVIT OF SERVICE BY MAIL |

STATE OF NEW YORK)
COUNTY OF MONROE)

     I, KELLEY COUCH, being duly sworn, deposes and says:

     I am not a party to the action, am over 18 years of age, and reside at Rochester, New York.

     On May 14, 2014, I served a copy of the within PROOF OF CLAIM by mailing the same in a sealed envelope, with postage prepaid thereon, in a post office or depository of the United States Postal Service within the State of New York, addressed to the last known addresses as indicated below.

RICHARD CROAK
314 GREAT OAKS BLVD.
ALBANY, NY 12203

ANDREA E. CELLI
7 SOUTHWOODS BOULEVARD
ALBANY, NY 12211

KIMBERLY A. BRODERICK
127 CALHOUN DRIVE
TROY, NY 12182

                            FEIN, SUCH & CRANE, LLP
                            Attorneys for Secured Creditor

By:

                            KELLEY COUCH
                            Bankruptcy Specialist
                            28 EAST MAIN STREET, SUITE 1800
                            ROCHESTER, NY 14614
                            585/232-7400

Sworn to before me this
14 day of May, 2014

NOTARY PUBLIC, STATE OF NEW YORK

LISA M. KEMP
Notary Public, State of New York
Qualified in Monroe County
No. 01KE6291388
Commission Expires October 16, 20/7

MIN: ▮▮▮▮▮▮▮▮▮▮          Loan Number: ▮▮▮▮▮▮▮▮

**InterestFirst℠ NOTE**

AUGUST 30, 2006               LANGHORNE,        PENNSYLVANIA
         [Date]                    [City]              [State]

127 CALHOUN DRIVE, TROY, NEW YORK 12182
                    [Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $184,300.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UVANTAGE HOME LENDING SERVICES, INC

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         6.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A)  Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first 120   months, and then will consist of principal and interest.

I will make my monthly payment on the 1st   day of each month beginning on OCTOBER 1 , 2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before principal. If, on SEPTEMBER 1        , 2036         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2300 EAST LINCOLN HWY SUITE 609,
LANGHORNE, PENNSYLVANIA 19047
                                        or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,036.69          for the first 120 months of this Note, and thereafter will be in the amount of U.S. $1,401.35          . The Note Holder will notify me prior to the date of change in monthly payment.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the Principal and the interest required under this Note will be paid prior to the Maturity Date.

Borrower Initials: ▮▮   ▮▮▮

I, the undersigned, am an attorney admitted to practice in the courts of New York, and certify that the annexed consisting of 5 pages has been compared by me with the original and found to be a true and complete copy thereof.
Dated: 12/13/13

161121.net

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments.

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2 .000 % of my overdue payment of interest and/or principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how

Borrower Initials: _____

| Family-Fannie Mae MODIFIED INSTRUMENT |
| Page 2 of 3 |

Form 3271.33 1/01

and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender' will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL BRODERICK        -Borrower

_____ (Seal)
KIMBERLY A. BRODERICK    -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

[Sign Original Only]

Allonge to Promissory Note

Allonge to Promissory Note

Without recourse pay to the order of:

Countrywide Bank, N.A.

By: _____

Name: Brian S. Mountain

Title: Treasurer

Company: Uvantage Home Lending Services, Inc.

Borrower Name: MICHAEL BRODERICK
KIMBERLY A. BRODERICK

Borrower's Address: 127 CALHOUN DRIVE
TROY, NY 12182

Loan Amount: $184300.00

Dated: 08/30/2006

PAY TO THE ORDER OF
Countrywide Home Loans, Inc

WITHOUT RECOURSE
COUNTRYWIDE BANK, N.A.

BY: _____

ADRIANA GARCIA
COLLATERAL PROCESSING OFFICER

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT



Exhibit D



**Rensselaer County**
**Frank J. Merola**
**County Clerk**
**Troy, New York**

**Book: 3713     Page: 153**

Document Number ▮▮▮▮▮▮▮        Document Type: Mortgage
Recorded Date: 09/13/2006

    Parties: BRODERICK, MICHAEL                    **Pages Charged: 18**
        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS IN     **Pages Scanned: 19**
    Comment:
    Recorded By: LAURIE LIBERTY

**\*\* Examined and Charged as Follows \*\***

| | | |
|---|---|---|
| Mortgage | 79.50 | |
| Coversheet | 3.00 | |
| | | |
| **Recording Fee:** | **82.50** | |

| | **Town** | **Serial #** | **Consideration** |
|---|---|---|---|
| Tax-Mortgage | 2,278.75 SCHAGHTICOKE | CX 4864 | 184,300.00 |
| Basic | 921.50 | | |
| Local | 460.75 | | |
| Additional | 436.75 | | |
| | | | |
| Special Additional | 460.75 | | |
| Transfer | 0.00 | | |
| **Tax Fee:** | **2,278.75** | | |

**\*\* DO NOT REMOVE \*\***

**\*\* This Page is Part of the Document \*\***

I hereby certify that the within and foregoing was recorded in the Clerk's Office for:

**File Information**                          Mail Back
Document Number ▮▮▮▮▮▮               UVANTAGE HOME LENDING SERVICES INC
  Recorded Dat ▮▮▮▮▮▮                2300 EAST LINCOLN HWY SUITE 609
  Receipt Numb ▮▮▮▮▮▮

                                          LANGHORN PA 19047-

Frank J. Merola
Rensselaer County Clerk



Mortgage Recording Tax:

After Recording Return To:

Doc#:
Bk: 3713 Pg: 154

ERVICES, INC
UITE 609
19047

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

MIN:

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated  AUGUST 30, 2006     , together with
all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."  MICHAEL BRODERICK AND KIMBERLY A. BRODERICK, HUSBAND
AND WIFE

whose address is  127 CALHOUN DRIVE, TROY, NEW YORK 12182

sometimes will be called "Borrower"

and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely
as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender."  UVANTAGE HOME LENDING SERVICES, INC

will be called "Lender." Lender is a corporation or association which exists under the laws of

Lender's address is  2300 EAST LINCOLN HWY SUITE 609, LANGHORNE,
PENNSYLVANIA 19047

(E) "Note." The note signed by Borrower and dated  AUGUST 30, 2006     , will be called the
"Note." The Note shows that I owe Lender  ONE HUNDRED EIGHTY-FOUR THOUSAND
THREE HUNDRED AND 00/100            Dollars (U.S. $ 184,300.00      )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to
pay the debt in full by  SEPTEMBER 1, 2036    .
(F) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."

Section:  50        Block:  1        Lot(s)/Unit No(s).:  36

Borrower Initials:

HpkI13.new

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."
The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

Borrower Initials: _____ _____

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)  The Property which is located at                           127  CALHOUN  DRIVE

[Street]

TROY                                                , New York    12182

[City, Town or Village]                                                    [Zip Code]

This Property is in          RENSSELAER                    County.  It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: SEC 50 BLOCK 1 LOT 36

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

Borrower Initials: _____ _____ _____ _____ _____ _____

3.  Monthly Payments For Taxes And Insurance.

(a)  Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items;"

(1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)  The leasehold payments or ground rents on the Property (if any);

(3)  The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)  The premium for Mortgage Insurance (if any);

(5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b)  Lender's Obligations.

· Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Borrower Initials: _____ _____ _____ _____

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property,

or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay these amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage

Borrower Initials:

Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage Insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the

Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains Insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises

and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

Borrower Initials:

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time

period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

. 21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition: or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Borrower Initials: _____ _____ _____ _____ _____ _____

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.



BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
MICHAEL  BRODERICK          -Borrower

_____ (Seal)
KIMBERLY A.  BRODERICK      -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

Witness:

Witness:

_____

_____

State of New York                )
                                 ) ss.
County of   RENSSELAER           )

On the     30     day of     August          , in the year  2006  , before me,
the undersigned, personally appeared   MICHAEL BRODERICK, KIMBERLY A. BRODERICK

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

**KELLY M. MULLIGAN**
**NOTARY PUBLIC, STATE OF NEW YORK**
         N
**QUALIFIED IN RENSSELAER COUNTY**
**COMMISSION EXP. JUNE 13, ___2009___**

_____
            Notary Public State of New York

_____
            Print or Type Name

(Seal, if any)

My commission expires: June  13, 2009

Tax Map Information No.:  SEC 50 BLOCK 1 LOT 36

**Loan Number:** ███████

Date: AUGUST 30, 2006

Property Address: 127 CALHOUN DRIVE, TROY, NEW YORK 12182

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

A.P.N. # : SEC 50 BLOCK 1 LOT 36

Mµ4993.rscm

**Schedule A Description**

          Page   1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Schaghticoke, County of Rensselaer and State of New York, described as follows:

BEING Lot 18 on the South side of Calhoun Drive, as shown on a map entitled, "Derian Subdivision (Section-1)," Hagop and Nectar Derian, owners, said Map prepared by Zarch Altounian, Licensed Professional Engineer, dated October 29, 1984 and filed in the Rensselaer County Clerk's Office on December 4, 1984 (Map 96, Drawer 1984).

SAID PREMISES being known as 127 Calhoun Drive, Troy, New York.

**Rensselaer County**
**Frank J Merola**
**County Clerk**
**Troy, New York 12180**

Volm-6105  Pg-286

Instrument Number:
As
**Recorded On: November 28, 2011**    Assignment or Release of Mortgage
**Parties:** BRODERICK MICHAEL.
To
**BANK OF AMERICA NA**                                **Billable Pages:**    2

**Recorded By: CORELOGIC**                            **Num Of Pages:**      3
**Comment:** BANK OF AMERICA NA

---

### ** Examined and Charged as Follows: **

| Assignment or Release of Mort | 51.50 | Coversheet | 5.00 |
|---|---|---|---|
| **Recording Charge:** | 56.50 | | |

---

### ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded In the Clerk's Office For:  Rensselaer County, NY

**File Information:**                                    **Record and Return To:**
Document Number                                         CORLOGIC
Receipt Number                                          450 E BOUNDRY ST
Recorded Date/Time:  November 28, 2011 10:31:35A        CHAPIN SC 29036
Book-Vol/Pg:  Bk-R  Vl-6105  Pg-286
Cashier / Station:  C O  /  Cashier Station 1



Frank J. Merola
Rensselaer County Clerk

Recording Requested By:
Bank of America
~~Prepared By: Danilo Cuenca~~

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.'

Doc#: ▮
Bk: 6105 Pg: 287

DOCID#

Property Address:
127 Calhoun Dr
Troy, NY 12182-9799
Property Location:
GHTICOKE
11/8/2013

MIN #: ▮                    MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UVANTAGE HOME LENDING SERVICES, INC.
, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 400 NATIONAL WAY, SIMI VALLEY, CA 93065 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UVANTAGE HOME LENDING SERVICES, INC. |
| Made By: | MICHAEL BRODERICK AND KIMBERLY A. BRODERICK, HUSBAND AND WIFE |
| Date of Mortgage: | 8/30/2006 |
| Original Loan Amount: | $184,300.00 |
| Section: 50   Lot: 36 | Block: 1 |

Recorded in Rensselaer County, NY on: 9/13/2006, book 3713, page 153 and instrument number ▮

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
__11/10/11__

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR UVANTAGE
HOME LENDING SERVICES, INC.

By: _____
Talisha F. Wallace Assistant Secretary



State of California
County of Ventura

On NOV 1 0 2011 before me, _____ **Markus Hicks** _____, Notary Public, personally
appeared __Talisha T. Wallace_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public: _____ **Markus Hicks**          (Seal)
My Commission Expires: ___2 /12 / 15

MARKUS HICKS
Commission
Notary Public - California
Los Angeles County
My Comm. Expires Feb 12, 2015

DocID#

## ASSISTANT SECRETARY'S CERTIFICATE

### OF

## BANK OF AMERICA, NATIONAL ASSOCIATION

The undersigned, Devra Lindgren, an Assistant Secretary of Bank of America, National Association (the "Association"), a national banking association organized and existing under the laws of the United States of America and having its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, does hereby certify that:

1.   Effective April 27, 2009, **Countrywide Home Loans Servicing LP** changed its name to **BAC Home Loans Servicing, LP.**

2.   Effective July 1, 2011, **BAC Home Loans Servicing, LP** merged with and into **Bank of America, National Association.**

IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of said Association this 29th day of March, 2012.

[SEAL]

Devra Lindgren
Assistant Secretary